[Cite as *State v. Masciarelli*, 2017-Ohio-170.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 15 BE 0016 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MICHAEL A. MASCIARELLI | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:                 Criminal Appeal from the Court of
                                          Common Pleas of Belmont County,
                                          Ohio
                                          Case No. 14 CR 257

JUDGMENT:                                 Reversed and Remanded
                                          Vacated.

APPEARANCES:

For Plaintiff-Appellee:                   Atty. Daniel P. Fry
                                          Belmont County Prosecutor
                                          147-A West Main Street
                                          St. Clairsville, Ohio  43950
                                          No Brief Filed.

For Defendant-Appellant:                  Atty. Brent A. Clyburn
                                          White & Clyburn
                                          604 Sixth Street
                                          Moundsville, West Virginia  26041

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

                                          Dated:  January 17, 2017

WAITE, J.

{¶1} Appellant Michael A. Masciarelli appeals a March 18, 2015 judgment entry from the Belmont County Court of Common Pleas convicting him on one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree; imposing a twelve-month sentence in the penitentiary which was suspended to six months in the Belmont County Jail and six months in the Eastern Ohio Correctional Center ("EOCC"); and ordering restitution and a civil judgment in the amount of $21,153.00. A review of the record reveals plain error in the sentence imposed. Therefore, we must reverse the judgment of the trial court as it is contrary to law. Appellant's sentence is hereby vacated and the matter remanded to the trial court to determine which sentence is most appropriate, prison or community control sanctions.

## Facts and Procedural History

{¶2} On November 6, 2014, the Belmont County Grand Jury indicted Appellant on one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree. R.C. 2913.51(A) states: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(C) reads, in pertinent part, "[I]f the value of the property involved is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars * * * receiving stolen property is a felony of the fourth degree."

{¶3} On February 20, 2015, Appellant entered a guilty plea to an amended charge of receiving stolen property, a felony of the fifth degree. The state explained

that the amendment of the degree of felony from the fourth to the fifth degree was "based upon evidence that [the state] would be able to prove at trial, so [the state was] comfortable with that amendment." (2/20/15 Plea Hrg. Tr., p. 2.)

{¶4} R.C. 2913.51(C) reads, in part: "If the value of the property involved is one thousand dollars or more and is less than seven thousand five hundred dollars, if the property involved is any of the property listed in section 2913.71 of the Revised Code, receiving stolen property is a felony of the fifth degree." R.C. 2913.71, captioned: "Degree of offense when certain property is involved," states as follows:

Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is any of the following:

* * *

(B) A printed form for a check or other negotiable instrument, that on its face identifies the drawer or maker for whose use it is designed or identifies the account on which it is to be drawn, and that has not been executed by the drawer or maker or on which the amount is blank.

{¶5} At the plea hearing, Appellant's father explained the manner in which the crime in this case was committed: "The problem is these gentlemen that [Appellant] was living with, okay, he was like his step-son, all right. What [the step-son] did, he worked for the [Belmont County] Park Commission. He was writing

checks, okay. He made checks out to [Appellant] to take down to cash and bring the cash back to him." (2/20/15 Plea Hrg. Tr., p. 13.)

**{¶6}** The state acknowledged at the plea hearing that the other individual involved in the crime was the principal actor and that he died prior to indictment. *Id.* at 12. The plea agreement indicated that the state was not opposed to a community control sanction, if it was accompanied by an order for full restitution at $100 per month, with a minimum of $3,600.00 paid within the first three years. (2/20/15 Plea Agreement, p. 3.)

**{¶7}** At the plea hearing, the trial court judge informed the parties that, although the judge had not yet determined the appropriate sentence, the amount of money taken from the county park commission warranted jail time. (2/20/15 Plea Hrg. Tr., p. 13.) The judge recommended that the following occur at the sentencing hearing: (1) defense counsel should call a representative of the county park commission to demonstrate that the victim had no objection to a community control sanction, and (2) Appellant should be employed to demonstrate his ability to comply with an order for full restitution in the amount of roughly $28,469.00. *Id.* at 11.

**{¶8}** At the sentencing hearing on March 16, 2015, a board member of the county park commission appeared and acquiesced to the imposition of the community control sanction. The county park commission board member requested an order of restitution in the amount of $21,153.00, which was reduced due to a contribution from the deceased principal actor's estate. (3/16/15 Sentencing Hrg. Tr., p. 3.)

**{¶9}** Appellant apologized for his role in the crime and explained that his deceased co-actor was to have repaid the money. The judge responded, "[t]he issue is not whether [the deceased] would have paid the money back or not; the issue is whether the money should have been stolen to start with.* * * It's not like I rob a bank, I get caught, and therefore I [sic] since I don't die, I pay the money back." *Id.* at 4. The judge continued, "[h]ow does one steal $21,000 and think one's not going to jail?" *Id.* at 5.

**{¶10}** Based on the colloquy, the trial judge imposed a period of confinement, stating, "I know there was a request for a complete suspended sentence. That respectfully is not going to happen. I assess a judgment against [Appellant], a civil judgment in the sum of $21,153.00. I sentence [Appellant] to the maximum of six months in jail and six months in EOCC." *Id.* at 7-8. The judgment entry reads, in part:

> [T]he Court sentences [Appellant] to Twelve (12) Months in the penitentiary, suspended to Six (6) Months in the Belmont County Jail and Six (6) months in EOCC. It is further Ordered that [Appellant] shall pay reasonable Restitution in the amount of Twenty-One Thousand One Hundred Fifty-Three and No/100 Dollars ($21,153.00), to Belmont Park Commission, and a Civil Judgment is granted in that sum.

(3/18/15 J.E., p. 2.)

*Anders* brief

{¶11} Appointed appellate counsel filed a no merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.2d 493 (1967), and *State v. Toney*, 23 Ohio App.2d 203, 262 N.E.2d 419 (7th Dist.1970), and requested leave to withdraw from the case. To support such a request, appellate counsel is required to undertake a conscientious examination of the case and accompany his or her request for withdrawal with a brief referring to anything in the record that might arguably support an appeal. *Id.* at 207.

{¶12} In *Toney*, we recognized an indigent defendant's constitutional right to court-appointed counsel for direct appeal of their conviction. *Id.*, at paragraph one of the syllabus. After a conscientious examination of the record, counsel should present any assignments of error which could arguably support the appeal. *Id.*, at paragraph two of the syllabus. If counsel determines that the defendant's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, then counsel should inform the appellate court and the defendant and ask to withdraw as counsel of record. *Id.* at paragraph three and four of the syllabus. The defendant is then given the opportunity to raise, *pro se*, any assignments of error he chooses. *Id.* at paragraph four of the syllabus. This Court will then examine the record, counsel's brief and any *pro se* arguments, and determine if the appeal is wholly frivolous. *Id.* at paragraph five of the syllabus. If we decide that the appeal is wholly frivolous, we will permit counsel to withdraw and affirm the judgment of conviction and sentence.

**{¶13}** Appointed appellate counsel filed a no merit brief on September 28, 2015. On October 21, 2015, we issued a judgment entry informing Appellant that counsel found no meritorious issues and granted him thirty days to file his own written brief. No such brief was filed.

**{¶14}** Although Appellant did not file a *pro se* pleading, we are nonetheless required, pursuant to *Anders*, to thoroughly and independently review the record to determine whether counsel made a diligent effort to find an appealable, nonfrivolous issue. See also *Toney*, *supra*.

### Analysis

**{¶15}** In this case, Appellant entered a guilty plea to an amended fifth-degree felony theft offense. We consider three aspects of Appellant's conviction and sentence: his guilty plea, sentence, and the order of restitution, to determine whether there exists any assignment of error that could arguably support an appeal.

**{¶16}** A plea of guilty or no contest must be made knowingly, intelligently and voluntarily for it to be valid and enforceable. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. In order to ensure that a plea in a felony case is knowing, intelligent and voluntary, Crim.R. 11(C)(2) requires the trial judge to address the defendant personally to review the rights that are being waived and to discuss the consequences of the plea.

**{¶17}** Crim.R. 11(C)(2)(c) requires the court to review five constitutional rights that are waived when entering a guilty or no contest plea in a felony case: the right to a jury trial, the right to confront one's accusers, the privilege against compulsory

self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19. A trial court must strictly comply with Crim.R. 11(C)(2)(c) when advising the defendant of the constitutional rights that are being waived in entering a felony plea. *Id.* at syllabus. Prejudice is presumed if the court fails to inform the defendant of any of the constitutional rights listed in Crim.R. 11(C)(2)(c). *Id.* at ¶ 29.

**{¶18}** A defendant must also be informed of his nonconstitutional rights prior to entering a guilty plea, which include the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty, and that after entering a guilty plea or a no contest plea the court may proceed to judgment and sentence. Crim.R. 11(C)(2)(a)(b). The nonconstitutional requirements of Crim.R. 11 are subject to review for substantial compliance rather than strict compliance. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 11-12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Further, "failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice." *Griggs*, supra, at ¶ 12.

**{¶19}** Appellant was afforded his allocution rights pursuant to Crim.R. 32(A)(1); the trial court asked him directly if he had anything to say before it pronounced sentence. The trial court properly notified Appellant that at his release

he would be subject to a term of postrelease control, and notified him about the consequences of violating postrelease control. R.C. 2967.28(C).

**{¶20}** Appellant's sentence falls within the statutory prison term range. R.C. 2929.14(A)(5). The trial court imposed the maximum sentence, twelve-months in the penitentiary, but suspended this sentence, ordering instead that Appellant serve six months in the Belmont County Jail and six months in EEOC. The trial court considered R.C. 2929.11, R.C. 2929.12 and R.C. 2929.13, and relied on the total value of the stolen property, which exceeded the statutory amount codified for a fifth-degree felony theft offense by more than $20,000.00.

**{¶21}** Turning to the restitution order, the criminal statute at issue in this case mandates the degree of the offense based on the value of the stolen property. Here, Appellant entered a guilty plea and was convicted of a fifth-degree felony theft offense: receiving stolen property valued at greater than $1,000.00 but less than $7,500.00. We do note, however, that the trial court imposed an order of restitution and a civil judgment in an amount greater than $21,000.00.

**{¶22}** In 2013, the Ohio Supreme Court held that the amount of restitution is not correlated to the degree of a theft offense. In *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, the defendant was convicted of a fifth degree felony theft offense, but was ordered to pay $63,121.00 in restitution to the victim. Lalain had pleaded guilty to the theft of property valued at $500.00 or more but less than $5,000.00. Based on his plea, he argued that any order of restitution could not exceed $4,999.99.

**{¶23}** R.C. 2929.18, captioned "Financial sanctions," limits the amount of restitution to the amount of the economic detriment suffered by the victim as a direct and proximate result of the commission of the offense. R.C. 2929.18(A)(1). In *Lalain*, the Ohio Supreme Court provided the following explanation in concluding that the amount of an order of restitution need not correlate to the degree of the felony theft offense:

> For example, R.C. 2913.02(B)(5) states, "If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree," regardless of the value of the motor vehicle. A trial court choosing to order restitution in a case of grand theft of a motor vehicle is not restricted to the value corresponding to a fourth-degree felony and may instead award restitution pursuant to R.C. 2929.18(A)(1).

*Id.* at ¶24.

**{¶24}** Accordingly, the trial court in this case did not abuse its discretion when it awarded actual restitution in an amount greater than the degree of the felony theft offense would seem to dictate.

**{¶25}** While the length of Appellant's sentence comports with law, the manner in which the trial court ordered the sentence to be served does not. The trial court sentenced Appellant to twelve months of imprisonment which was suspended to a sentence of six months in the Belmont County Jail and six months in EOCC. "The current felony sentencing statutes, contained primarily in R.C. 2929.11 to 2929.19,

require a judge either to impose a prison term or impose community-control sanctions." *State v. Baker,* 152 Ohio App.3d 138, 2002-Ohio-7295, 787 N.E.2d 17, ¶ 12 (7th Dist.). Thus, Ohio courts have held that the felony sentencing statute does not allow a trial court to impose both a prison sentence and community control for the same offense. *Id.* Instead the trial court must decide which sentence is most appropriate, prison or community control sanctions, and impose one of those two options, based on the record. *State v. Vlad*, 153 Ohio App.3d 74, 2003-Ohio-2930, 790 N.E.2d 1246, ¶ 16 (7th Dist.).

**{¶26}** In addition to a civil judgment levied against Appellant and a restitution order, Appellant was ordered to serve twelve months in prison which was suspended to six months in jail and six months in EOCC. It is apparent, then, that the trial court sentenced him to a prison term and community control sanctions on the felony offense, which is not permitted by statute. "[T]he only sentence which a trial judge may impose is that provided for by statute[.]" *State v. Anderson,* 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 12. The trial court's sentence affected Appellant's substantial rights in that "[j]udges have no inherent power to create sentences * * * [and lack] the authority to impose a sentence that is contrary to law." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 22-23. "[J]udges are duty-bound to apply sentencing laws as they are written." *Id.* at ¶ 22. As the trial court imposed a sentence which is contrary to law, the sentencing error did affect Appellant's substantial rights.

<u>Conclusion</u>

**{¶27}** Pursuant to the filing of the *Anders* brief, appointed counsel is permitted to withdraw. However, the trial court committed plain error by sentencing Appellant to both a prison sentence and a community control for the same offense. We reverse the judgment of trial court, vacate the sentence, and remand the case for resentencing for the trial court to decide which sentence is most appropriate, prison or community control sanctions, and impose whichever option is deemed to be necessary.

Donofrio, J., concurs.

Robb, P.J., concurs.